By the Court. Duer, J.
The objections taken on the trial to the sufficiency of the preliminary proofs, and to the right of the plaintiff to maintain the action in his own name, were properly abandoned on the argument before us. Where an action is *103 brought by a trustee, in whom the legal title is vested, it is certainly not necessary that the cestui que. trust should be made parties, either as plaintiffs or defendants, unless where the action is brought for the purpose of determining, or involves the determination of, their respective rights and interests under the instrument creating the trust.
The objection, that the assignment to the plaintiff was made without that consent in writing of the defendants which the policy requires, although not abandoned upon the argument, is, in our opinion, quite as untenable as those that have been mentioned. The restrictive clause in the policy, upon which the objection is founded, refers only to an assignment of the policy during the pendency of the risks, and accompanying the transfer of an interest in the property insured. Thus interpreted, there are evident reasons for its introduction; but when the assignment is made, as in the case before us, when the risks have ended, for the sole purpose of enabling the assignee to recover a loss, it is, in reality, no more than the assignment of a debt, which, as the company has no motive of interest for preventing, it would be unreasonable to suppose, was meant to be prohibited. This limited interpretation of the clause was adopted by this court many years since in the case of Britchta v. the Lafayette Ins. Co.; and as we see no reason to doubt the propriety of the decision, and are not aware that it has ever been departed from, we hold ourselves bound to follow it. (2 Hall’s S. C. Rep. 372, and also, Lazarus v. Commercial Ins. Co., 5 Pick. 79, and 2 Duer on Ins., pp. 64-66.)
The plaintiff would be entitled to judgment were there no other objection to his recovery; but an objection remains to be stated, to which no answer, that we can deem satisfactory, has been given. It is insisted, that before the happening of the loss, the insurance had been rendered void by the violation, on the part of the assured, of that provision in the policy which made it his duty to give notice to the company, with all reasonable diligence, of any further insurance that might be effected by him, and have the same endorsed -on the policy, or otherwise acknowledged by the company in writing. A further insurance was effected by him on the 23d June, 1854i No other notice of the fact was given to the company than that contained in the preliminary proofs, upon which payment of the loss was demanded; and those, the case *104 shows, were not made up and served until the 26th of July following. The delay, it is contended, was unreasonable, and has not been justified or excused.
On the part of the plaintiff two replies have been made to the objection. First. That the witness Wales was the general agent of the defendants; and that, as the subsequent insurance was procured by him, his knowledge of the fact was equivalent to notice to the company; and several adjudged cases were referred to as sustaining this position. Second. That there was no want of reasonable diligence, even on the supposition that no other notice was given to the company than by the service of the preliminary proof.
Neither reply can we hold to be sufficient.
The allegation that Wales was the general agent of the defendants, to whom a notice, binding on the company, of a subsequent insurance, could properly be given, is not only not sustained, but in our opinion, is plainly contradicted by the evidence. He was an insurance broker, and from the nature of Ms business as such, was no more the general agent of the defendants than of any other company or individuals to whom Ms professional services had been rendered. In procuring the insurance he was the agent of the assured, and if, before the transaction was complete, he became, for any purpose, the agent of the defendants, that agency wholly ceased, when he had delivered the policy to the assured, and had paid over to the company the premium wMch he had received.
From this time, there was no such relation between him and the defendants, as could make it his duty to communicate to the company his personal knowledge of a subsequent insurance, or could justify third persons in believing that this duty was imposed on, and would be discharged by, Mm; and we think it would be extravagant to say, that the knowledge wMch, in a separate transaction, he acquired of a farther insurance, was alone sufficient to affect the company with notice of the fact. The cases, therefore, to wMch we were referred, bear no analogy to the present; and it is needless to consider whether we should have held them to be applicable or controlling, had the general agency of Wales, or the fact that he was held forth to the public by the defendants as such agent, been established on the trial. The question whether, had express and timely notice of the subsequent Msurance been given *105 to the defendants, they might not, by refusing to endorse it on the policy, or otherwise to acknowledge it in writing, have discharged themselves from all further liability, we shall also leave undecided.
The sole question that remains is, whether there was such a want of reasonable diligence on the part of the assured, in giving the notice which the policy requires, as rendered the insurance void at the time of the fire; for if it was then in force, the defendants are certainly liable, and the notice given by the preliminary proofs may well be deemed sufficient. As the facts are undisputed, this question was treated by the counsel, and is regarded by us, as purely a question of law; and its proper determination as such, it seems to us, is not, at all, difficult or doubtful. If the only purpose for which notice of a subsequent insurance is required, were that of enabling the prior insurers to ascertain for what proportion of a loss they might eventually be liable, then, until the actual occurrence of a loss, no such notice would seem to be necessary ; since, if given then, it would fully answer the purpose for which alone it was intended, and a delay, working no prejudice to the insurers, could not justly be qualified as unreasonable. But this is not the only, or, as we apprehend, the principal reason for requiring that express notice of every further insurance upon the same property shall be given. By one of the conditions annexed to the policy, the company may elect at any time, and for any cause, to terminate the insurance by giving notice to the assured, and returning a due proportion of the premium; and to enable an insurance company to exercise properly this discretionary power, it is important, that it should have a timely knowledge of the facts upon which its exercise will usually depend. Of these facts, there is probably none more important to be known, than than that of the total amount of- the sums insured upon the same property, since it is by a comparison of this amount with the value of the property, that prudent insurers, in making the election which the policy gives to them, are certain to be governed. Hence it is, that the fact of a further insurance is required to be made known to them with “ all reasonable diligence,” instead of deferring its communication until the happening of a loss. We think, therefore, that the words “ reasonable diligence,” looking to the purpose for which they are inserted, demand promptitude of action, and ex- *106 elude unnecessary delay; and, consequently, that an unexplained delay of nineteen days is conclusive proof of a want of that “reasonable diligence” which was necessary to be shown to continue the policy in force. We think that it was not in force when the fire happened, and that the loss claimed is, therefore, not recoverable.
The verdict must be set aside, and the complaint be dismissed with costs.