No. 22,328.

M. L. EIKELBERGER, *Appellee,* v. THE INSURANCE COMPANY OF NORTH AMERICA, *Appellant.*

OPINION ON REHEARING.

SYLLABUS BY THE COURT.

1. AGENCY—*Authority and Powers of a Local Agent of Fire Insurance Company.* A license issued by the state insurance department to the local agent of an insurance company at the company's request is merely a regulatory permit; but neither the license itself nor the statute concerning its issue has the effect of defining the agent's powers to bind his company, nor do they change the general law of agency. His powers are merely those which his company expressly or impliedly confers upon him, according to the general law of principal and agent.

2. FIRE INSURANCE—*Terms of Policy—Premium Note in Default—Lapse of Policy—Antidiscrimination Law.* Where an insurance company contracts to carry the fire risk on property for a term of years, and the insured gives his promissory note to pay for such insurance, and the insurance contract provides that the company shall not be liable for any loss or damage that may occur to the property while the note given for the premium remains in default, it is not a substantial violation of the antidiscrimination law, when a fire loss occurs during the default of the maker of the note and while the insurance is suspended, for the insurance company in denying its liability to offer to surrender the note in exchange for a surrender of the insurance policy, without claiming any portion of the insurance earned before the insured defaulted in the payment of his note.

Appeal from Saline district court; DALLAS GROVER, judge. Opinion on rehearing filed June 5, 1920. Former judgment adhered to. (For original opinion of reversal see 105 Kan. 675, 189 Pac. 139.)

*Robert Stone, E. H. Gamble, George T. McDermott,* and *Robert L. Webb,* all of Topeka, for the appellant.

*Z. C. Millikin,* of Salina, for the appellee.

*Edwin E. Brookens,* of Topeka, for the Kansas insurance department as *amicus curiæ.*

The opinion of the court was delivered by

DAWSON, J.: Out of abundance of caution in disposing of the plaintiff's claim of right to recover on a fire insurance policy which by its express terms was suspended and inoperative at the time the plaintiff suffered a fire loss, and prompted also by a request by the state department of insurance, *amicus curiæ,* a rehearing was granted in this case.

However, after a careful consideration of new briefs of counsel, and the oral arguments also, the court cannot discern that it failed to consider and decide, deliberately and correctly, every proposition involved in the case so far as presented by plaintiff and defendant in the trial court; and unless the suggestions raised by the *amicus curiæ* disclose an erroneous result, our former decision (105 Kan. 675) will have to stand.

The department of insurance, *amicus curiæ,* raises two main propositions:

"First. An insurance agent has such authority as is given him by the general law of agency, by the statutes of the state of Kansas, and by the license which the department issues him. Such authority cannot be cut down by a private, secret, undisclosed agreement or understanding between the agent and the company.

"Second. Under the antidiscrimination law of 1909 (Gen. Stat. 1915, §§ 5363-5373) every company subject to the act must have uniform rates and must charge every person exactly the same premium for equal protection. Premium is earned only while the insurance contract is in force. Risk and premium go hand in hand. If one ceases the other ceases. In other words, rates must be absolutely uniform."

On the first of these, counsel for the insurance department argue that because of the broad language of the act providing for the issuance of licenses by the department to the local agents of fire insurance companies upon their written request, every agent so licensed is in effect a *general* agent of his company. The pertinent provisions of the licensing act (Gen. Stat. 1915, §§ 5178, 5179) read:

"Sec. 5178. It shall be unlawful for any person, company or corporation to transact the business of insurance or guaranty, or do any act toward transacting such business, unless the said person, company or corporation shall have been duly authorized under the laws of this state to transact such business and shall have received proper written

Eikelberger v. Insurance Co.

authority from the superintendent of insurance in conformity with the provisions of the laws of this state relative to insurance and guaranty; . . .

"Sec. 5179. Any insurance company not organized under the laws of this state may appoint one or more general agents in this state, with authority to appoint other agents of said company in this state. A certified copy of such appointment shall be filed with the superintendent of insurance, and agents of such company appointed by such general agent shall be held to be the agents of such company as fully, to all intents and purposes, as if they were appointed directly by the company. Agents for any such company in this state may be appointed by the president, vice president, chief manager or secretary thereof, in writing, with or without the seal of the company; and when so appointed, shall be held to be the agents of such company as fully as if appointed by the board of directors or managers in the most formal mode."

It is rather a remarkable contention that these statutory provisions are in effect a ban upon the otherwise undoubted power of a fire insurance corporation to limit the authority with which it may clothe its local agent at any outlying crossroads in Kansas. Corporate powers are not conferred by licensing acts. The latter are regulatory and permissive, and the grants of corporate power are to be found in the corporation law of the state. The governing body of a corporation is its board of directors. Its officers, even its president, only exercise such powers as are expressly or impliedly conferred upon them by the governing body. The corporation may create officers and agents, general and special, with broad or restricted powers, and the corporation is bound and *only* bound by their acts when such acts are within the real or apparent scope of the authority conferred upon them. The law of agency is a very large subject and one which could scarcely be touched in a single opinion, however much we might be disposed to display our learning on that subject. It must suffice here to say that the license issued by the insurance department to a local insurance agent, at the request of his principal, is merely the state's permit for him to ply his business, and a tacit admission by the insurance superintendent that so far as he is advised the licensee is an honest man, or at least a man of fair business reputation. One effect of the statute—perhaps its main purpose—is to exercise the state's right, through its superintendent of insurance, to bar a known swindler or other disreputable or untrustworthy person from passing as

an insurance agent to the detriment of the public. (*Hauser v. North British & Mer. Ins. Co.*, 206 N. Y. 455, 42 L. R. A., n. s., 1139, 1142.)

There is no question of any secret agreement between the company and its local agent in this lawsuit.

Substantially the same point raised by the insurance department has required the attention of other courts, but none of them appear to have had any difficulty in reaching the same conclusion which we do. (*Wood v. Firemen's Insurance Co.*, 126 Mass. 316; *Barry, etc., Lumber Co. v. Insurance Co.*, 136 Mich. 42; *Lauze v. Insurance Co.*, 74 N. H. 334.)

It must be held, therefore, that a license issued by the state insurance department to the local agent of an insurance company at the company's request is merely a regulatory permit; but neither the license itself nor the statute concerning its issue has the effect of defining the agent's powers to bind his company, nor do they change the general law of agency.

Passing to the insurance department's second proposition, there is nothing substantial in the contention that the insurance company violated the spirit of the antidiscrimination law when it offered to remit the part of the premium earned at the time of the default of plaintiff to pay his premium note—a matter of some $6.40. Being haled into court by plaintiff, the company might, without prejudicing its defense, have counterclaimed for that small sum. Counsel for the department expatiate on the virtues of the antidiscrimination law, to all of which the court heartily subscribes (including the writer, who vindicated that law before the court of last resort—*German Alliance Ins. Co. v. Kansas*, 233 U. S. 389), but neither its terms nor its spirit require its administration with such subtle nicety as counsel contend for.

The rule of reason applies to this act as to all legislation and to all jurisprudence; and the act is not offended against by an insurance company which merely forgoes its right to collect a trifling sum due it for carrying an insurance risk for seven months rather than go to the expense of reducing its claim to judgment. (*Dubbs v. Haworth*, 102 Kan. 603, 606, 171 Pac. 624.) Such a judgment might be uncollectible, and the company would merely be throwing good money after bad.

Eikelberger v. Insurance Co.

We were advised in argument that the insurance rate on a three years' contract is the sum of two separate yearly rates. If so, a person who buys and pays for a three years' policy gets a different rate from one who buys his insurance for three years on annual policies. A man who occupies his insured property himself gets a lower rate than he would if the property were occupied by a tenant. The nature, location, etc., of property all enter into the making of different insurance rates, and this is altogether proper. These reasonable differences in rates do not violate the act. It would make a mere fetich, an interminable and oppressive nuisance, of a wise and efficient statute to interpret the antidiscrimination law in any other fashion. So long as the defendant pursues the same general policy towards all those of its patrons who have to buy their insurance on credit, or who give notes for their insurance, there is no violation of the act; but the court does not mean to intimate that the department may not reasonably supervise and change, or suggest reasonable changes, in the general business policy of insurance companies towards persons who obtain insurance on credit and then fail to pay.

The court holds that where an insurance company contracts to carry the fire risk on property for a term of years, and the insured gives his promissory note to pay for such insurance, and the insurance contract provides that the company shall not be liable for any loss or damage that may occur to the property while the note given for the premium remains in default, it is not a substantial violation of the antidiscrimination law, when a fire loss occurs during the default of the maker of the note and while the insurance is suspended, for the insurance company in denying its liability to offer to surrender the note in exchange for a surrender of the insurance policy, without claiming any portion of the insurance earned before the insured defaulted in the payment of his note.

The former judgment of reversal is adhered to.